THE STATE, FRANCIS M. LEWIS, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF CUMBERLAND, THE BRIDGETON RAPID TRANSIT COMPANY AND SOUTH JERSEY TRACTION COMPANY.

1. The Bridgeton Rapid Transit Company, organized under the act of April 6th, 1886, had no right to construct a trolley road.
2. The board of chosen freeholders have the right to exercise supervision over county bridges, and within reasonable limits to control the mode in which such bridges shall be used. The consent of the board is a prerequisite to the right of a street railway company to use the bridge.
3. It was the duty of the board of freeholders, before giving authority to a street railway company to use a county bridge, to see that the bridge was safe for such use.
4. The action of the board of freeholders may be reviewed by this court, where the board clearly abuses the discretion committed to it.

5. By the lease and assignment by the Bridgeton Rapid Transit Company to the South Jersey Traction Company, the latter company derived no right to use the county bridge for a trolley road.

6. A taxpayer of the city and county has such an interest in the subject-matter of this controversy as entitles him to a review of the action of the board of freeholders by the writ of *certiorari*.

7. Whether the traction company can use the public street for cars propelled by electric motors without acquiring the rights of abutting landowners is not decided.

On *certiorari*.

Argued at November Term, 1893, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff, *William E. Potter.*

For the defendants, *Anthony Q. Keasbey.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This writ brings up a resolution of the board of chosen freeholders of Cumberland county, passed December 14th, 1892, giving permission to the Bridgeton Rapid Transit Company, its successors and assigns, to lay double tracks across a county bridge, over a navigable stream, in Bridgeton, and the right to operate a street railway thereon by any mechanical power except steam.

The Bridgeton Rapid Transit Company was incorporated November 23d, 1892, under the act of April 6th, 1886, and the supplements thereto.   *Pamph. L., p.* 185.

Under this organization the rapid transit company had no right to construct a trolley road.   *Green* v. *Trenton,* 25 *Vroom* 92.

On the 20th of April, 1893, the South Jersey Traction Company was organized under the act of April 14th, 1893. *Pamph. L., p.* 302.

On the 23d of June, 1893, the Bridgeton Rapid Transit Company, by a lease of that date, granted and demised to the South Jersey Traction Company, its successors and assigns,

for the term of nine hundred and ninety-nine years, all the property and all the rights, powers, franchises and privileges of the lessor, reserving as a rent therefor the sum of $1 per annum.

The rapid transit company never did any work in the construction of a street railway, but after the execution of said lease the traction company proceeded with the construction of a trolley road until it was arrested in its work by the allowance of a writ of *certiorari* in this case.

It is the duty of the board of freeholders to erect and maintain bridges like the one referred to in this resolution, whether within or without the limits of a city. *Whitall* v. *Freeholders*, 11 *Vroom* 302; *Beatty* v. *Titus*, 18 *Id.* 89.

For the neglect of this duty indictment will lie. There is nothing in the act of 1886 or in the charter of the city of Bridgeton (*Pamph. L.* 1875, *p.* 354) which, expressly or by implication, deprives the board of freeholders of the right to exercise such supervision and control over this bridge as will enable it to perform its statutory duty. That duty cannot be performed unless the board may, within reasonable limits, control the mode in which the bridge shall be used.

This bridge was constructed by the board of freeholders of Cumberland, by authority of an act of the legislature passed March 14th, 1867 (*Pamph. L.*, *p.* 269), and by said act is under the control of said board.

It must follow, therefore, that the consent of the board is a prerequisite to the right of a street railway company to use the bridge.

A large portion of the sum raised for county purposes by taxation upon every citizen within and without the limits of incorporated cities is often appropriated to the expense of erecting and maintaining such bridges.

The duty devolved upon the board of freeholders, before passing said resolution, to see that the bridge was safe for the new use.

While the courts cannot interfere with the board of freeholders in the proper exercise of their powers, their action

may be reviewed when they wrongfully, illegally or fraudulently appropriate the public moneys or when they transcend their powers or clearly abuse the discretion committed to them. *Lewis* v. *Freeholders,* 8 *Vroom* 254; *McKinley* v. *Freeholders,* 2 *Stew. Eq.* 164.

In this case it is clear from the testimony that the bridge in its present condition is not of sufficient strength to bear with safety the added weight and wear of a street railway, and not of sufficient width to permit of the granted use without injurious interference with ordinary travel.

The case shows expressly that prior to the passage of the resolution, the board of freeholders instituted no inquiry as to whether the bridge would bear the additional burden. It was not until afterwards that they employed an expert engineer, who reported that it would be unsafe to allow the bridge to be occupied by the street railway.

The question is not whether, when the board of freeholders has exercised its discretion and passed its judgment upon the propriety of permitting the use of the public property in a given way, this court can review its action, but whether it can do so, when it affirmatively appears that the board allowed a county bridge to be appropriated to the use of a private corporation, by which the bridge is endangered and the safety of public travel impaired, without previous inquiry to enable it to act intelligently. I think that the resolution certified was passed by the board of freeholders improvidently in abuse of their power, and there appears to be no mode of protecting the public interest in such a case, except by the writ of *certiorari.* But if the resolution adopted by the board of freeholders is without the alleged infirmity, the South Jersey Traction Company can derive no authority under it to use the bridge for its purposes. The resolution gives power to the rapid transit company to operate a street railway thereon by any mechanical power except steam. This language must be interpreted to mean "by any mechanical power which said rapid transit company might lawfully use." As before stated, that company, under the case of *Green* v. *Trenton, supra,*

could not introduce the trolley system. It acquired no right, by virtue of this resolution, to apply that system, and could transmit to the traction company no greater right than it had. The rapid transit company had the right, under the act of 1886, to carry passengers only, while the traction company, under the act of 1893, is authorized to carry both passengers and freight. It cannot be assumed that the right to use the bridge would have been granted to the latter company, the conditions being so essentially different. The traction company is without authority from the board of freeholders to use the bridge. The only remaining question is whether, if the resolution is illegal and the subject of review, the relator has a right to intervene by *certiorari.* His *status* is that of a taxpayer of the city and county, subject to taxation for the purpose of maintaining the bridge.

A long line of decisions has recognized the rule that any taxpayer may prosecute a writ of *certiorari* to review any municipal or other official action which tends to burden his taxing district with a debt. *State, Gregory,* v. *Jersey City,* 5 *Vroom* 390; *Seidler* v. *Hudson County,* 10 *Id.* 632; *State* v. *Paterson, Id.* 490; *Conover* v. *Davis,* 19 *Id.* 112; *Read* v. *Atlantic City,* 20 *Id.* 558.

It is not necessary for the taxpayer to wait until the assessment consequent upon the illegal act is levied. Public policy requires that this rule should be liberally exercised in aid of those who, at their own expense, are willing to invoke this legal remedy to lessen the burden of taxation.

The relator has such an interest in the subject-matter of this controversy as entitles him to the judgment of this court upon the legality of the resolution certified. In my opinion the resolution should be set aside.

Whether the traction company can use the public street for cars propelled by electric motors without acquiring the rights of abutting landowners, is a question upon which no opinion is intended to be expressed.