## THE STATE, DAVID P. ELMER, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF CUMBERLAND COUNTY ET AL.

The board of chosen freeholders of the county of Cumberland, by resolution, granted to a street railway company the right to lay its tracks on the centre of the Commerce street bridge in Bridgeton (which bridge was built and maintained by the board) and to run its cars thereon. It clearly appeared that, owing to the narrowness of the bridge, no ordinary vehicle could pass on either side of the cars while crossing, so that during the passage of the cars no such vehicle could cross in the opposite direction. *Held*, that such resolution was invalid, either because the board had no power to pass it, or because, if the board possessed such power to consent to a use of such a bridge by a street railway, the grant of such an exclusive use was, under the circumstances, unreasonable and a plain abuse of the discretion committed to the board.

Argued at June Term, 1894, before Justices MAGIE and GARRISON.

For the prosecutor, *William E. Potter.*

For the defendants, *Anthony Q. Keasbey.*

The opinion of the court was delivered by

MAGIE, J.   The controversy in this case is over a resolution of the board of chosen freeholders of the county of Cumberland adopted at a meeting on March 21st, 1894, whereby, among other things, permission was given to the West Side Railway Company to locate and construct a street railway over the Commerce street bridge, in the city of Bridgeton, in said county, and to operate cars over said bridge by any mechanical power except steam ; the tracks of the railway to be laid in the centre of the bridge.

This court has recently considered a similar resolution of the same board granting permission to another street railway company to construct and operate its railway over another bridge in Bridgeton. *Lewis* v. *Freeholders of Cumberland*, 27 *Vroom* 416.

It was held in that case that the consent of the board of chosen freeholders was an essential prerequisite to the right of a street railway company to make use of a county bridge by its tracks and cars.   It was further held that the action of such a board in giving consent could be here reviewed and set aside if it clearly appeared that in giving consent the board had abused the discretion committed to it.   The resolution in that case was vacated as a clear abuse of the board's discretion, because it appeared that the bridge then in question was not of sufficient strength to permit its use for the cars of the street railway with safety, and it was not of sufficient width to admit of such use without injurious interference with ordinary travel.

Prosecutor contends, among other things, that, upon the evidence in this case, the resolution before us is clearly shown

to be an abuse of the discretion of the board for the same reasons that were held to invalidate the resolution in the Lewis case.

Without considering any of the other reasons assigned, I have reached the conclusion that this case should be disposed of upon the above mentioned contention, and that that contention must, upon the authority above cited, prevail.

There is very persuasive evidence that the Commerce street bridge is not of sufficient strength to support the cars of the street railway company with safety. But there is the evidence of an expert who had examined the bridge and who had reported to the board that it had sufficient strength for the purpose. Under those circumstances, I do not think the court would be warranted in pronouncing this resolution void for unreasonableness or as an abuse of discretion for this reason.

But the case plainly shows that if a car of the street railway company enters upon the bridge on the tracks for which consent is given, every vehicle going in an opposite direction must wait on the other side until the car has cleared the bridge, for the bridge is so narrow as to make it impossible for any vehicle to pass with safety on either side of any car of the company, even of those of least width. The consent, therefore, gives to the railway company the use of the bridge for certain periods, and as often as they choose to run their cars, to the exclusion of others who may have occasion to use it.

In my judgment, such a grant, if within the power of the board, is a clearly unreasonable and abusive exercise of such power.

But in my judgment the board was without power to give such consent. Assuming that it is settled by the Lewis case that the board may consent to a street railway company's use of a county bridge by its cars, its power to consent is limited. It cannot consent to a use destructive, even temporarily, of the lawful use by others having occasion to use it. The bridge was built and is maintained for the passage of the

public on foot or in vehicles, the track of which is regulated by law. No power is given to this public body to prohibit the passage of such vehicles. Nor can it give to any person, natural or artificial, a monopoly of passage. The street railway and its cars constitute a modern use of highways of a kind similar to the uses to which highways are devoted. If chosen freeholders can consent to their use of a county bridge whereby a highway is carried over a river, their power is limited to granting permission for a use compatible with the customary use of the bridge. It does not extend to permitting the occupation of the centre of a bridge to the exclusion of other vehicles during the passage of the cars. *Detroit City Railway Co.* v. *Mills*, 85 *Mich.* 634.

For this reason the resolution brought up by this *certiorari* must be set aside, with costs.