65 577
68 565
65 577
o69 381

CHARLES W. ENNIS, DEFENDANT IN ERROR, v. EDEN MILLS PAPER COMPANY ET AL., PLAINTIFFS IN ERROR.

Argued November 20 and 21, 1900—Decided March 4, 1901.

1. The plaintiff filed a lien claim on the 14th of March, 1898, on the property of the Eden Mills Paper Company, builder and owner, claiming a lien upon the premises for materials furnished. Judgment by default was entered for $1,512.89, both generally against the Eden Mills Paper Company, as builder, and specially as a lien upon the premises mentioned. The defence is that the plaintiff has not prosecuted his claim in the manner required by the statute, and that by reason of his failure in that respect the lien was discharged. The statute in question provides, among other things, that "if such claimant shall fail to prosecute his claim diligently

within one year from the date of the issuing of such summons or such further time as the court may by order direct, such lien shall be discharged." *Gen. Stat.*, *p.* 2074. The judgment in this case was not entered until the 13th of July, 1899, more than one year after the issuing of the summons. In all other respects the suit was prosecuted strictly in conformity with the act. On June 3d, 1899, which was more than a year after the date of the furnishing of the last materials for which the lien was claimed, and more than a year from the date of issuing the summons on the mechanics' lien, the judge at the Circuit made an order allowing the plaintiff three months further time from the date of the order to prosecute his claim upon the mechanics' lien. *Held*—

1. That an order extending the time to prosecute the claim must be made while the lien claim is still in force and undischarged. The act was designed to permit the court to enlarge the time for the prosecution of the lien claim, and cannot be construed to authorize the court to revive a lien claim which by force of the act has expired.

2. The language of the statute, "prosecute his claim diligently," does not mean that the suit shall be prosecuted in strict conformity with the prescribed procedure. "Diligently" is a word of indefinite signification. "Diligence" and "negligence" are relative terms, depending upon varying circumstances. Ordinary diligence is defined to be that degree of care which men of common prudence generally exercise in their affairs, and depends upon the circumstances of the particular case.

2. On the day the lien claim was filed the paper company went into the hands of a receiver appointed by the Court of Chancery. The debt due to the plaintiff from the company was admitted by the receiver, and the property on which the lien was claimed was sold by the receiver and purchased by George A. Bagley, who purchased subject to the claim of the plaintiff. On May 29th, 1899, the plaintiff presented a petition to the Chancellor, asking permission to prosecute his suit on the mechanics' lien, and the Chancellor made an order to that effect. This order was filed in the office of the clerk of the county of Morris on the 3d of June, 1899. The same day the judge of the Circuit Court granted a rule requiring the defendant to plead within thirty days after service, &c. This rule was duly served on the president of the Eden Mills Paper Company, personally, on June 12th. No plea or demurrer having been filed within the time limited by the order, on the 13th of July, 1899, judgment final was entered. *Held*, that while the appointment of a receiver did not *per se* stay the plaintiff's suit, yet such an appointment does operate practically to stay suits which are in progress for or with a view to the establishment of liens upon the property of the insolvent. The plaintiff would have gained nothing by the entry of the judgment except an ascertainment of the amount of his claim which, in fact, was not and is not disputed. Under such circumstances it cannot be said that the plaintiff was guilty of negligence in not having done the nugatory act of entering judgment.

3. On August 7th, 1899, Bagley filed his petition in the Circuit Court in the name of the Eden Mills Paper Company and the receiver, asking that the judgment be opened or set aside for the non-compliance of the plaintiff with the provisions of the Mechanics' Lien act. On presenting this petition, the judge of the Circuit Court granted a rule to show cause, with leave to take depositions. This rule was discharged on the 16th of October, 1899. *Held—*

1. That the judgment as against the Eden Mills Paper Company was regular, and that Bagley having become the purchaser at the receiver's sale, not only with knowledge of the plaintiff's claim, but subject to it, had no equitable ground on which to ask that the judgment be opened or set aside.

2. The judgment in this case being regular, whether it should be opened to admit a defence to the suit was a matter largely in the discretion of the Circuit Court. This court, on a writ of error, will not interfere with that discretion, unless for substantial reasons.

On writ of error to the Morris County Circuit Court.

For the plaintiffs in error, *Charles L. Corbin* and *Raymond P. Wortendyke.*

For the defendant in error, *Mahlon Pitney* and *John B Vreeland.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This is an action for the enforcement of a mechanics' lien for materials furnished by the plaintiff below to the Eden Mills Paper Company, builder and owner. The lien claim was filed in the office of the clerk of the county of Morris on the 14th day of March, 1898, claiming a lien upon the mill of the defendant and a certain tract upon which the same was located, for the sum of $1,333.33, for materials furnished the said owner between the 13th day of August, 1897, and the 23d day of February, 1898. Judgment by default was entered on the 13th of July, 1899, for $1,512.89, both generally against the Eden Mills Paper Company, as builder, and specially, as a lien upon the premises mentioned.

The defence is that the plaintiff has not prosecuted his lien claim in the manner required by the statute, and that by

reason of his failure in that respect the lien was discharged and the judgment erroneous. This presents the construction and effect of section 13 of the original Mechanics' Lien act of 1853 (*Rev., p.* 671), as amended by section 4 of the act of 1895. *Pamph. L., p.* 315; *Gen. Stat., p.* 2074. That section, as amended, provides that no · debt shall be a lien unless a claim is filed within four months from the date of the last work done or materials furnished for which such debt is due; nor shall any lien be enforced by virtue of this act unless the summons in the suit for that purpose shall be issued within ninety days from the date of the last work done or materials furnished in such claim; and the time of issuing such summons shall be endorsed on the claim by the clerk upon the sealing thereof, and if no such entry be made within four months from such last date, or *if such claimant fail to prosecute his claim diligently* within one year from the date of issuing such summons or such further time as the court may, by order, direct, such lien shall be discharged.

The date of the last work, as exhibited in the bill of particulars, was February 23d, 1898. The lien claim was filed March 14th, 1898, within the time prescribed by the statute. The summons was sealed and issued on the same day, and the time of issuing was endorsed upon the lien claim by the clerk. It was served on the 14th of March and returned on the 25th of March, 1898. The declaration was filed on the 13th of April, 1898. Everything was done in compliance with the statute, except that the plaintiff failed to enter judgment by default within a year from the time the summons was issued. To excuse this delay the plaintiff relies, in the first place, on an order made by the Circuit Court allowing the plaintiff three months further time from the date of the order to prosecute his claim upon the mechanics' lien. This order was made on the 3d of June, 1899, more than a year from the date of the last work for which the lien is claimed and more than a year from the date of issuing the summons on the mechanics' lien. I think the proper construction of this statute requires an order of the

court allowing further time to be made while the lien claim was still in force and undischarged. The statute, as it seems to me, cannot be construed to authorize the court to revive a lien claim which, by force of the act, has expired, without regard to time or the changes that may have arisen in the state of the title. The Mechanics' Lien law is a special statutory proceeding. It confers special rights upon a class of creditors that other creditors do not possess. Throughout the entire act there are statutory limitations with respect to the steps to be taken to obtain and enforce a mechanics' lien. No reason exists for straining the construction of the section in question so as to extend to the lien claimant in the prosecution of his suit unlimited time at the discretion of the court. It is quite possible that the section may be so construed as to allow the owner of the land, after the expiration of the year, to have from the Circuit Court an order fixing a time within which the claimant shall prosecute his claim, where he has diligently, but not successfully, prosecuted it within the year. But this question is not before us.

The decision of this case must turn upon the existence of facts which justified the plaintiff in the delay in prosecuting his suit. Everything had been done by him—filing his claim, issuing summons, having it properly endorsed and served, and filing his declaration—in strict compliance with the statute. He may be said to have prosecuted his claim with diligence; his neglect was simply in the failure to enter the judgment he was entitled to. The inquiry, then, is whether the plaintiff's failure to enter his judgment discharged the lien.

On the same day the lien claim was filed by the plaintiff the Eden Mills Paper Company went into the hands of a receiver—William A. Macy being appointed receiver by the Court of Chancery. The debt due from the company to the plaintiff has been admitted by the receiver, and the property on which this lien was claimed was sold by the receiver on the 15th of September, 1898, and purchased by George A. Bagley. Macy testified that the announcement

was made at the sale, and before the property was sold, that the sale of the real estate was subject to a first mortgage of $20,000 and interest, a second mortgage of $5,000 and interest, a claim of C. W. Ennis, aggregating about $1,300, and a claim of George B. Smith of about $100. Bagley testified that he was made aware of this lien claim and of the amount of it at the time he purchased the property. The evidence is indisputable that he purchased the property at the receiver's sale, not only with knowledge of the plaintiff's claim, but subject to it. He does not stand, then, in the place of a *bona fide* purchaser. He did not, by what occurred at the time of his purchase, assume the payment of the encumbrances, but he took the title subject to those encumbrances. On December 30th, 1898, the plaintiff wrote to Mr. Bagley, sending him a statement of the amount of the lien claim and costs—$1,363.23, and interest from March 4th, 1898, $66.90, total $1,430.13—and asking that it be paid, and saying that if it was paid he would have the lien crossed off the record in the clerk's office. To this letter Bagley replied, under date of January 10th, 1899, as follows: "I would be glad, of course, to do as you desire regarding the payment of your claim against the Eden Mills Company, but, as you know, I bought it subject to existing liens. I have paid out considerable money already for insurance, taxes, &c., and have been unable to find anybody to take the property and reimburse me for the amount I have paid and assume the liens. * * * Some parties * * * have an impression that there is but little legality of *your* claim, and that of another party, but until I can find someone who will take the property off my hands, I am not in shape to advance another penny on the property, preferring to let it go rather than assume more liability." On July 12th, 1899, Bagley entered into an agreement with the Stony Brook Paper Company to sell the premises to that company, which is now the owner.

The lien claim not having been paid, the plaintiff took steps to have his judgment entered. On the 29th of May, 1899, he presented a petition to the Chancellor, asking per-

mission to prosecute his suit on the mechanics' lien, notice of which application was served on the receiver. On that day the Chancellor made an order that the plaintiff be permitted to prosecute his suit commenced in the Morris County Circuit Court on the 14th of March, 1898, upon a mechanics' lien claim filed by him against the property of the defendant— the receiver to be saved harmless of all costs and damages. This order was filed in the clerk's office of the county of Morris on the 3d of June, 1899. On the same day the judge of the Circuit Court granted a rule on the defendant ordering that the defendant plead within thirty days after service of a copy of the rule upon it, or that judgment by default be entered against it. This rule was entered in the clerk's office of the county of Morris on the 3d of June, 1899. It was duly served on the president of the Eden Mills Paper Company personally on June 12th, 1899, and also on the receiver, service on him being duly acknowledged by his attorney. No plea or demurrer having been filed within the time limited by law, and thirty days having elapsed since the service of a copy of the said order to plead, it was, on the 13th day of July, 1899, ordered that judgment final be entered, and judgment final was thereupon entered.

It was objected that the rule to plead should have been served on Bagley or the Stony Brook Paper Company, and not having been so served, the judgment is irregular. The Mechanics' Lien law recognizes as owner throughout the entire proceedings the person who was owner when the lien claim was filed. Purchasers after lien claim filed are purchasers *pendente lite,* and take title subject to the issue of the pending suit. If a party acquiring an interest subsequent to the filing of the lien claim desires to contest it, he should apply to the court for leave to defend, by an appropriate plea, in the name of the person who was owner when the lien was filed. This order the court, in its discretion, will grant, either with or without terms. The Circuit Court would have no power to make an order that the lien was discharged for want of diligence in the prosecution of the suit. That question is one of fact, upon which the claimant would have a

right to go before the jury. The judgment in this respect is regular.

On the 7th of August, 1899, Bagley filed a petition in the Circuit Court for the benefit of himself and the Stony Brook Paper Company, and in the name of the Eden Mills Paper Company and William A. Macy, the receiver, praying that the judgment should be opened and set aside on the ground of the non-compliance by the plaintiff with the provisions of the Mechanics' Lien act. Mr. Macy did not sign this petition, nor does it appear that he took any part in this proceeding, except to be a witness, and the Court of Chancery, of which he was the officer, by the Chancellor's order of May 29th, 1899, expressly permitted the plaintiff to prosecute this suit. On presenting this petition the judge of the Circuit Court granted a rule to show cause, with leave to take depositions, and depositions were taken. This rule was discharged on the 16th of October, 1899, whereupon this writ of error was sued out. The facts stated in this opinion are taken from those depositions, which were returned with this writ of error.

The errors assigned are, first, that the return of the sheriff to the summons does not show a lawful service on the defendant; that no jurisdiction over the defendant appears, and that there is error in that the declaration does not recite how the defendant was served.

The eighteenth section of the Mechanics' Lien act provides that the suit shall be commenced by a summons against the builder and the owner of the land and building, and that said summons shall be directed and tested and made returnable, and may be served and returned, in the same manner as other writs of summons. *Gen. Stat.*, p. 2066. Section 87 of the Corporation act provides that in any personal action against a corporation the first process may be a summons, a copy whereof shall be served on the president or other head officer of the corporation, or left at his dwelling-house or usual place of abode, at least six entire days before its return. It then provides that if the president or other head officer cannot be found in this state to be served with process, and

has no dwelling-house or place of abode in this state, then a copy of the summons may be served on the clerk or secretary of the corporation. *Gen. Stat., p.* 924. The summons in this case was directed to the sheriff of the county of Morris, returnable March 25th, 1898, and the return is in the following words: "Served by handing a copy of the writ to Henry C. Reynolds, the secretary of the said company, March 14th, 1898. Edgar L. Durling, sheriff." The objection to the return in this case is that it affirmatively appears that the summons was served upon the secretary, without it appearing that the president or head officer could not be found and had no dwelling-house at which process against the corporation might be served. It appears in the case that the corporation had legal notice of the pendency of this suit, and the rule to plead was served on the president and an affidavit of service was made and filed, and it is so recited in the rule for judgment.

The objection to the manner of service of the summons was not made in the court below. It was introduced in this court by an amendment of the assignments of error. This proceeding came before the Circuit Court on the petition already referred to. The depositions taken conform to the petition, and the case was decided in the court below upon the petition and depositions. In setting out the grounds on which relief against this judgment was prayed in the petition, no allusion was made to the manner in which the writ was served, nor was any evidence offered or called for on that subject in the taking of the depositions. If such a point had been made before the Circuit Court, the imperfection in this return might have been cured by testimony. The objection cannot now be entertained. The same disposition, and for the same reason, will be made of the objection to the manner in which the mode of service is set out in the declaration.

The remaining question is whether the plaintiff prosecuted his claim diligently within the year, within the meaning and intent of the statute. That presents a question of fact to to be found, in the first instance, by the Circuit Court.

The language of the statute is "prosecute his claim diligently." The adverb used is a word of indefinite signification. It does not mean that the suit shall be prosecuted in strict conformity with the prescribed procedure. The omission to enter judgment for a day or a week after, by strict practice, it was due, would not invalidate the judgment. Diligence in the civil law and in our law is divided into degrees: ordinary diligence, extraordinary diligence and slight diligence. Diligence and negligence are relative terms, and depend on varying circumstances. Ordinary diligence is defined to be that degree of care which men of common prudence generally exercise in their affairs. 9 *Am. & Eng. Encycl. L.* (*2d ed.*) 456 *and note.*

The appointment of the receiver in this case did not *per se* stay the plaintiff's suit. But the policy of the law in this state is that all controversies concerning the indebtedness of the insolvent company and the liens upon its property shall be disposed of in the Court of Chancery. Such is plainly the import of sections 68, 78, 81 and 86 of the Corporation act of 1896 (*Pamph. L., p.* 299), and such has always been the practice in this state. *Smith* v. *Trenton Falls Co.,* 3 *Gr. Ch.* 505, 510*; State Bank* v. *Receivers,* 2 *Id.* 266; *Jacobus* v. *Mutual Benefit Life Insurance Co.,* 12 *C. E. Gr.* 604. In the case first cited it was held that an execution creditor of an incorporated company could not, after the appointment of receivers, file a bill to settle the validity and priority of claims and encumbrances upon the property of the company; that it is the duty of the receivers to settle priorities, and, in so doing, to decide upon the validity of claims against the company. A precedent quite pertinent to this subject is found in *Demott* v. *Stockton Paper Ware Manufacturing Co.,* 5 *Stew. Eq.* 124. It was held in that case that the receiver had power to adjust, by agreement, the rights of claimants under the Mechanics' Lien law, although no steps beyond filing their claims had been taken, and that where such claims had passed into judgment with the receiver's knowledge, they should be regarded as established. It appears in the case that some, if not all, of the lien claims upon which

nothing was done after the filing of the claims were agreed to or adjusted by agreement with the receiver. The Chancellor said: "It is urged that the receiver had no power to make such settlement; but it is clear that the receiver not only has the power, under the act, but it is his duty to settle and adjust the claims of encumbrance and other creditors of the estate. He acts for this court, and may have its aid and direction, if he requires it, in any case of doubt or difficulty, and those who are aggrieved by his decision may appeal to this court under the statute. It was the object of the act not only to prevent an unequal distribution of the property of an insolvent corporation, but also to save it from the costs of litigation and the consequent depreciation which must arise from the delay incident to settling the *status* and claims of encumbrancers upon it. * * * In regard to the claim of Stair, to which the objection is made that the issuing of summons is not endorsed upon it (as before stated, it appears that the claim has passed into judgment), the claim was filed two days after the commencement of the proceedings in insolvency. *While a creditor claiming a lien may, under such circumstances, by an application to the court, be permitted to pursue his claim to judgment, for the purpose of establishing his right to the lien, and the amount which is due thereon, it is not necessary that he should do so unless required by the court or the receiver.* Therefore the same diligence is not required of a lien claimant in regard to the issuing of summons upon his claim after a decree of insolvency in such a case as this as before. *The appointment of a receiver operates practically to stay suits which are in progress for, or with a view to the establishment of, liens upon the property of the insolvent corporation."* *Demott* v. *Stockton Paper Ware Manufacturing Co., 5 Stew. Eq.* 131, 132. Although the appointment of the receiver did not stay the plaintiff's suit, yet if, after judgment, he had proceeded to sell the property, he would have been subject to an order of the Chancellor staying the sale, probably granted with costs. It must also be borne in mind that the receiver has admitted the indebtedness to the plaintiff and adjusted the

dividend that would be due him, and that he proceeded to
sell the property expressly subject to the plaintiff's lien as
an existing lien, the amount of which was communicated to
the purchaser at the sale.

Under these circumstances, it seems to me that a prudent
man would have pursued the same course the plaintiff did.
He would have gained nothing whatever by the entry of a
judgment, except an ascertainment of the amount of his
claim, which was not disputed. To enter his judgment was
quite a nugatory act if he could not proceed to collect it by
execution. Under these circumstances, it would be highly
inequitable to take from the plaintiff the lien for his debt
and confer the benefit upon a purchaser who took and held
title subject to the payment of his debt; for, although the
petition is in the name of the Eden Mills Paper Company
and of the receiver, it was signed by Bagley alone, and pur-
ports to be for the benefit of him and of the Stony Brook
Paper Company.

The judgment in this case being regular, whether it should
be opened to admit a defence to the suit is a matter largely
in the discretion of the law court. This court, on writ of
error, will not interfere with that discretion unless for sub-
stantial reasons. We think, under all the circumstances, that
the plaintiff prosecuted his claim within the year with due
diligence, according to the spirit and meaning of the statute.
The order of the Circuit Court discharging the rule to show
cause should be affirmed.

DIXON, J. (dissenting). This case turns on the clause of
the Mechanics' Lien law (*Pamph. L.* 1896, *p.* 198; *Pamph
L.* 1898, *p.* 545) which declares that if the claimant of such
a lien "shall fail to prosecute his claim diligently within one
year from the date of issuing summons, or such further time
as the court may, by order, direct, such lien shall be dis-
charged."

The meaning of this clause is somewhat obscure. It
implies that some end is to be reached *within the year* by
diligent prosecution, but does not expressly state what end.

As, however, the primary end of prosecuting a claim in court is judgment, this part of the clause seems to mean that the claimant must prosecute his claim with such diligence as to obtain judgment *within the year*. The statute is silent also as to the time when and the grounds on which an order for further time may be made, but the reasonable implication is that such order may be made when it is shown that, notwithstanding diligent prosecution of the claim, judgment has not been obtained within the year; which may be shown after the year has ended. Construing the whole clause, I think the meaning is that the statute, of itself, gives the claimant one year after issuing summons in which to enter judgment; that if he does not enter judgment within that year, then he must show to the court that he has diligently prosecuted his claim, and thereupon the court may, by an order, direct that he have further time in which to enter judgment; and that, if judgment be not entered within the year, or within the time limited by such an order legally made, then the lien is discharged. After the expiration of the year, or of the period limited by order, the defendants interested in the land may secure conclusive evidence that the lien is discharged, by moving to *non pros.* the claimant as to the lien; a motion which must prevail, unless the claimant, by proof of diligent prosecution, shows himself entitled to further time.

In the case before us summons was issued March 14th, 1898, and the judgment upholding a lien was not entered until July 13th, 1899. Without an order for further time, such a judgment would be, on its face, illegal, as it would have awarded a lien which, by the statute, had been discharged. *Wheeler* v. *Almond,* 17 *Vroom* 161. But on June 2d, 1899, an order giving the claimant three months further time to prosecute his claim was made by the court, and if this order can be sustained, no error will appear in the judgment.

The order recites that it was based on a verified petition then presented to the court by the claimant. The order and petition are not strictly part of the record, and so are not brought into this court by the writ of error, and regularly a *certiorari* should have been issued to bring them here; but

they are printed in the paper-book, and counsel for the claimant expressly waives the irregularity. We should, therefore, consider them.

If the petition presents any matter on which it was lawful for the Circuit Court to find, as a fact, that the claimant had diligently prosecuted his claim during the year following the issuing of summons, then the conclusion of that court cannot be here disturbed, for our jurisdiction extends only to errors of law. But if the petition presents no such matter, then the finding was erroneous in law, and the order based thereon is illegal.

The petition states that on March 14th, 1898, the day on which the summons was issued, but after service of the summons, the Chancellor appointed a receiver of the defendant company; that on April 13th, 1898, the claimant filed his declaration in the cause; that thereafter he had frequently applied to the defendant and to the receiver to pay his claim and had hoped that they would do so, but they had not paid it; and that the receiver had sold the property on September 15th, 1898, subject to the lien claim.

These facts contain no evidence of diligent prosecution of the lien claim in the Circuit Court. Upon such prosecution, the proceeding in Chancery had, *proprio vigore,* no effect whatever. True, the Chancellor might, in those proceedings, have enjoined the suit at law, but he did not, and without such injunction that suit was in no way affected. The claimant was free to obtain judgment at any time after June 13th, 1898, when the time to plead expired, until March 14th, 1899, but simply chose to do nothing. Even after all hope of payment from the receiver was ended by the sale of September 15th, 1898, the claimant still had six months in which to obtain judgment. I am quite unable to perceive in these circumstances any evidence of the diligent prosecution of the claim; they show, on the contrary, an intentional omission to prosecute.

It therefore follows that the order of June 2d, 1899, was made without legal evidence, and should be set aside. With-

out its support, the judgment ·is erroneous, and should be reversed.

I have not attempted to consider whether the Chancery proceedings and the conduct of those holding title under the receiver's sale give the claimant any equitable rights, because such rights are not capable of adjudication on this writ of error. Nor is it necessary to discuss the testimony taken in the Circuit Court on the motion to set aside the order of June 2d, 1899; it suffices to say that the testimony does not change, for present purposes, the aspect of affairs set forth in the petition on which that order was made.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, FORT, GARRETSON, KRUEGER, HENDRICKSON, ADAMS, VREDENBURGH. 8.

*For reversal*—DIXON, COLLINS, BOGERT, VOORHEES. 4.