FRANK B. STRATFORD, EDWIN H. STRATFORD AND
HERBERT R. STRATFORD, PLAINTIFFS IN ERROR, v.
GEORGE S. MALLORY, JAMES TOMPKINS, ELIJAH S.
COWLES AND JOHN W. CHAPMAN, DEFENDANTS IN
ERROR.

Submitted March 21, 1904—Decided June 20, 1904.

1. Section 42 of the General Corporation act (*Pamph. L.* 1896, *p.*
291), which provides for a summary investigation by the Supreme
Court of corporate elections, authorizes the court either to estab-
lish the election complained of, or to order a new election, or make
such order and give such relief in the premises as right and
justice may require.  *Held*, that the court is free to deal with
the matter, not necessarily in accordance with strict legal rules,
but according to the substantial rights and equities.
2. An election of directors being set aside because the directors re-
ceiving a majority of votes had rendered themselves ineligible by
failure to produce the stock-books at the election, as required by
section 33 of the General Corporation act (*Pamph. L.* 1896, *p.*
288), and it appearing that the failure of the directors to produce
the stock-books occurred under circumstances that negatived any
fraudulent or improper motive, and where it was not reasonably
to be anticipated that harm would result; and it further appear-
ing that no harm did result therefrom, since every share of the
stock of the company was voted at the election by the same per-
sons who, according to the stock-books, were entitled to vote
thereon—*Held*, that it would be unfair to the voting stockholders
to install as directors the candidates who received a minority of
the votes, and that right and justice require the ordering of a new
election.

On error to the Supreme Court.

For the plaintiffs in error, *Gilbert Collins* and *Joseph H.
Lefferts*.

For the defendants in error, *Bedle, Edwards & Thompson*.

The opinion of the court was delivered by

PITNEY, J. This case arose upon application made by the
present plaintiffs in error to the Supreme Court under sec-

tion 42 of the General Corporation act (*Pamph. L.* 1896, *p.* 291) for a summary investigation of an election of directors of the Jersey City Paper Company. At the election four directors were to be chosen. Plaintiffs in error and defendants in error were opposing candidates. The latter were declared elected, having received a majority of the votes cast. At the time of the election the defendants in error were already in office as directors. They produced at the place of election a proper list of stockholders, showing the number of shares held by each, but omitted to produce the stock-books. Treating the defendants in error as ineligible to election because of failure to produce the books, by force of the terms of section 33 of the Corporation act, the plaintiffs in error prayed the Supreme Court to set aside the election of defendants in error and to declare the plaintiffs in error elected as directors. The matter came on to hearing in that court upon depositions taken by the respective parties. The court determined that defendants in error were ineligible for re-election as directors because of their neglect to produce the stock-books, as required by section 33; but, being of the opinion that it would be unfair to the voting stockholders to declare that the petitioners had been elected, the court ordered a new election to be held.

So far as this judgment operates to set aside the election of the defendants in error, it is not under review. Plaintiffs in error pray reversal because the Supreme Court ordered a new election and refused to declare the plaintiffs in error elected.

Section 42 of the Corporation act may, perhaps, be treated either as a summary substitute for a *quo warranto* proceeding with provision for trial by jury in the Supreme Court, or as a preliminary investigation in order to determine the *prima facie* title to office without barring a subsequent proceeding by *quo warranto*. For the purposes of the present case it makes no difference in which aspect it is regarded. The section declares: "The Supreme Court, upon application of any person who may be aggrieved by or complain of any

election, or any proceeding, act or matter in or touching the same, reasonable notice having been given to the adverse party, or to those who are to be affected thereby, of such intended application, shall proceed forthwith, and in a summary way hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of, or order a new election, or make such order and give such relief in the premises as right and justice may require; the court may, if the case require it, either order an issue to be made up in manner and form as it may direct, to try the rights of the respective parties to the office or franchise in question, or may give leave to exhibit, or direct the attorney-general to exhibit, an information in the nature of a *quo warranto* in relation thereto."

It is manifest that the latitude allowed to the court, either *to establish the election, or order a new election, or make such order and give such relief in the premises as right and justice may require,* leaves the court free to deal with the case not necessarily in accordance with strict legal rules but according to the substantial rights and equities of the matter. The finding of the Supreme Court, in this case, that it would be unfair to the voting stockholders to declare that the petitioners had been elected is a finding of fact which must be given its due weight. Whether the review by writ of error in this court must proceed according to the legal method, so that we are bound by the findings of the court below if there be any legal evidence to sustain them, or whether, on the other hand, it is to be treated as an appeal from an equitable tribunal whose findings of fact are open to review in this court, would make no difference in our conclusions in this case. There is, beyond controversy, legal evidence to sustain such a finding, and our consideration of the whole of the evidence has led us to a view thereof that accords with the view taken by the Supreme Court.

The facts, in substance, are as follows: The Jersey City Paper Company is a manufacturing concern, having its fac-

tory in that city. Its principal office was in the factory building. It had $43,000 of stock issued and outstanding, represented by four hundred and thirty shares of $100 each. The stock was held by few parties and transfers were seldom made. During four years preceding the election in question there had been but one transfer. This took place ten months preceding the date of the meeting and resulted in placing in the names of the several plaintiffs in error certain shares of stock formerly held by their deceased father, of whose will one of the plaintiffs in error was executor. At the time of the meeting there were but nine stockholders, all of whom were present in person of by proxy, viz.:

| | |
|---|---|
| E. S. Cowles, present....................... | 3 shares. |
| J. W. Chapman, by proxy.................... | 1 share. |
| W. C. Doubleday, present.................. | 1 share. |
| Estate of L. J. Mallory, by proxy to George S. Mallory, executor......................... | 140 shares. |
| George S. Mallory, present.................. | 5 shares. |
| Estate of George Stratford, by proxy to Herbert R. Stratford, executor...................... | 200 shares. |
| Frank B. Stratford, present................. | 5 shares. |
| Edwin H. Stratford, present............... | 5 shares. |
| James Tompkins, present................... | 70 shares. |
| | 430 shares. |

Four directors were to be elected. Every share of stock was duly voted. The shares held by the estate of George Stratford and by Frank B. and Edwin H. Stratford—two hundred and ten in all—were voted in favor of the plaintiffs in error. The remaining two hundred and twenty shares were voted in favor of defendants in error, who were thereupon declared elected. At the beginning of the meeting a correct list of the stockholders with the number of shares held by them, respectively, was produced by the defendants in error and was used by the inspectors of election as a

registry of voters. The stock-books were not produced owing to the circumstance that the meeting was held by consent at the office of Mr. Cowles, one of the directors, which was distant about a mile from the factory—fifteen minutes ride by street car. But the proofs show conclusively—indeed, it is undisputed—that if the books had been produced they would have evidenced the entire accuracy of the list of stock-holders that was presented at the meeting. No person would have been admitted to vote, none would have been prevented from voting by reason of any evidence that the books contained. In short, every outstanding share of the company was represented at the meeting, according to its actual ownership, either in person or by proxy, and every shareholder participated therein. There was evidence justifying the Supreme Court in finding, as a fact, that upon the organization of the meeting and before the commencement of the election the absence of the stock-books was mentioned by defendants in error, and an offer was then made to send for the books or to postpone the meeting, if desired, and that the production of the books was not insisted upon by plaintiffs in error, nor did they accede to the suggestion of a postponement. So far as the matter may be open to our review upon questions of fact, we find the facts to be as just stated.

Section 33 of the Corporation law requires every corporation to keep at its principal and registered office in this state the transfer-books, in which the transfer of stock shall be registered, and the stock-books, which shall contain the name and address of the stockholders and the number of shares held by them, respectively, which shall, at all times during business hours, be open to the examination of every stockholder; that the directors shall cause the secretary or other officer designated by them, having charge of said books, to make, at least ten days before every election after the first election, a full, true and complete list, in alphabetical order, of all the stockholders entitled to vote at the ensuing election, with the residence of each and the number of shares held by each, which list shall, at all times during business hours, be

kept at the principal and registered office, open to the examination of any stockholder; that the books aforesaid shall be the only evidence as to who are the stockholders entitled to examine such books or list and to vote at such election, and the board of directors shall produce at the time and place of such election such books and list, there to remain during the election, and the neglect or refusal of said directors to produce the same shall render them ineligible to any office at such election. Section 40 prescribes that, in case the right to vote upon any share of stock shall be questioned, the inspectors of the election shall refer to the stock-books of the corporation to ascertain who are the stockholders, and in case of a discrepancy between the books the transfer-book shall control and determine who are entitled to vote. The statute contemplates that the stock-list shall be used at the election as a convenient memorandum of the names of voters and their respective interests; but that, in case a vote be challenged, or any other question arise respecting the right to vote, the stock-books shall be referred to to determine the controversy, and in the event of a discrepancy between the books that the transfer-book shall govern; it being manifest from section 33 that the so-called stock-books are to be "ledgerized" from the entries contained in the transfer-books. The purpose of having the stock-books, transfer-book and stock-list at the election is to enable the inspectors speedily and accurately to conduct the election, so that the will of the majority may be truly expressed and accurately recorded. In the case before us it is shown, beyond controversy, that the main purpose of the act was in effect carried out at the election under review in spite of the non-production of the stock-books. Under circumstances such as these, the last clause of section 33, which declares that the neglect or refusal of the directors to produce the books and list at the election shall render them ineligible to any office at such election, is highly penal in its effects. The Supreme Court has enforced that penalty by setting aside the election. In our judgment, however, the court was correct in declaring that it would be unfair to the

voting stockholders to install as directors the present plaint-iffs in error, who received only a minority of the total votes cast. We base our conclusion upon the provision of section 42 of the Corporation act, which authorizes the court either to order a new election or to make such order and give such relief in the premises as right and justice may require. This enables the court to deal with the matter aside from technicalities in order to work out a just result. Were it not for the express prohibition of section 33, which renders defendants in error ineligible, their election might have been judicially confirmed, notwithstanding the informality complained of. *Downing* v. *Potts,* 3 *Zab.* 66, 74; *In re Griffing Iron Co.,* 34 *Vroom* 168, 174; affirmed, *Id.* 357.

It is of the essence of all elections that the will of the majority, properly expressed, should govern. It requires a clear case to justify the court in installing into office those who have received a minority of votes, on the ground that the majority voted for ineligible candidates. Under circumstances like the present, where the ineligibility arose out of a technical violation of a statutory duty, committed under circumstances that negatived any fraudulent or improper motive, where it was not reasonably to be inferred that harm would result, and where, in fact, no harm has resulted, the ends of justice are fully satisfied by an order setting aside the election and requiring a new election to be held.

The only substantial argument to the contrary is that which rests upon the suggestion that such a rule places it in the power of directors to perpetuate themselves in office by willfully withholding the stock-books and stock-list and thereby opening the election to persons who have parted with their stock. But the present decision can give no countenance whatever to any such scheme. Cases of the sort suggested may be dealt with as they arise. We lay down no absolute rule for all cases, much less do we intimate that any neglect or default on the part of the directors that was either designed to prevent the will of the stockholders from being fairly expressed and truly recorded or that, without design, might be

reasonably anticipated to have that result, would in any case be sanctioned.

The judgment of the Supreme Court will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, FORT, HENDRICKSON, PITNEY, VREDENBURGH, VROOM, GREEN, GRAY.　9.

*For reversal*—DIXON, BOGERT.　2.