DEFIANCE FRUIT COMPANY, PLAINTIFF IN ERROR, v.
THOMAS C. FOX, DEFENDANT IN ERROR.

Argued March 10, 1908—Decided June 15, 1908.

1. In many cases the question whether actions should be consolidated rests in the discretion of the court.

2. But an order consolidating local actions, the effect of which is to change the venue in one of the actions from that county where the lands in question are situate, or the cause of action arose, to another county, is not within the discretion of the court, affects the substantial rights of the party, and is reviewable on error.

3. In this state a writ of error is not confined to the review of proceedings in the course of the common law, but extends to decisions rendered in the exercise of the equitable powers of a court of law or in the course of its statutory or summary jurisdiction, provided they result in a final disposition of the matter and have not rested in the discretion of the court.

4. A final judgment rendered in the course of the common law may be reversed if it result from an erroneous decision of an interlocutory matter not in the course of the common law, provided such decision did not lie in discretion.

5. An order consolidating local actions, which has the effect of changing the venue in one of the actions from that county in which the parties are entitled to have the trial proceed to another county, is the proper subject of an assignment of error.

6. The function of a bill of exceptions is not confined to questions raised upon the trial of an action.

7. A justice of the Supreme Court who acted for that court in granting an order for the consolidation of local actions, the result of which was to work a change of venue, and who allowed a bill of exceptions upon the making of the consolidation order, has, within the meaning of our constitution, article 6, section 2, paragraph 6, given a judicial opinion in the cause in favor of the alleged error complained of, and is disqualified from sitting as a member of the Court of Errors and Appeals upon the review of the resulting judgment, where the consolidation order is assigned for error.

8. An order consolidating local actions, based upon a determination, as matter of fact, that the two actions theretofore depending were based upon a single cause of action that was properly triable in the county to which the cause was assigned for trial as a result of the consolidation, there being no ground for contending that the finding of fact was unsupported by evidence—Held, not erroneous.

9. Where there is a single injury by backwater affecting at the same time lands that lie in two counties, or where, by the construction of a dam in one county, water is backed upon lands lying in another county, the action is triable in either county.

On error to the Supreme Court.

For the plaintiff in error, *George J. Bergen* and *John W. Wescott.*

For the defendant in error, *Henry S. Alvord.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR.    The record brought up by this writ of error discloses that two separate actions of tort were brought by the Defiance Fruit Company, now plaintiff in error, against Fox, the defendant in error, in the Supreme Court; in one action the venue was laid in the county of Cumberland, and the declaration averred that the plaintiff was lawfully possessed of certain lands situate in that county, near to a certain stream of water, and that the defendant wrongfully raised a certain dam in the stream, and thereby flooded the lands of the plaintiff with backwater; in the other action the venue was laid in the county of Salem, and the declaration averred that the plaintiff was possessed of certain lands in that county, near to a certain stream of water, and that the defendant wrongfully placed and raised a certain dam across this stream, and thereby flooded the last-mentioned lands of the plaintiff with backwater.   So far as appears from the face of the declarations, the actions were based upon separate and distinct injuries to separate and distinct tracts of land; and since the causes of action were local, the venue in each action was properly laid in the county wherein the respective lands were alleged to be situate.   From the record it further appears that upon motion of the defendant, it being made to appear to the court that the two suits were founded upon the same cause of action, it was ordered that they be consolidated by discontinuing the action in which the venue was laid in Salem county, and continuing that in which the venue was laid in Cumberland county, in the same manner in all respects as if the declaration were couched in proper language to cover the damage to the plaintiff in both of said counties, and with leave to amend the

declaration if necessary. No amendment, however, was made. The defendant pleaded the general issue, and the consolidated suit was brought on for trial before a Circuit Court judge in the county of Cumberland, and resulted in a verdict in favor of the defendant, upon which judgment was entered.

All this appears by the strict record of the judgment; and by the same record it appears that the order consolidating the actions was made by Mr. Justice Trenchard for the Supreme Court. There is also a bill of exceptions sealed by Justice Trenchard to his ruling consolidating the actions.

Error having been assigned upon the order of consolidation, the first question stirred upon the argument in this court was whether Mr. Justice Trenchard was, under the circumstances, disqualified from sitting.

The constitution, article 6, section 2, paragraph 6, speaking of this court, provides that "When a writ of error shall be brought no justice who has given a judicial opinion in the cause in favor of or against any error complained of, shall sit as a member, or have a voice on the hearing, or for its affirmance or reversal; but the reasons for such opinion shall be assigned to the court in writing."

Since in the making of the order for consolidation Mr. Justice Trenchard sat and acted for the Supreme Court and allowed the bill of exceptions, it is plain that he has, within the meaning of the constitution, given a judicial opinion in the cause in favor of the alleged error complained of. He is, therefore, disqualified from sitting in this court if the alleged error is in its nature reviewable.

In many, if not in most cases, the question whether actions should be consolidated rests in the discretion of the court. But in the present case the effect of consolidation was, with respect to one of the two actions, to change the venue. By section 202 of our Practice act (*Pamph. L.* 1903, *p.* 537), the change of venue in transitory actions is left to the discretion of the court. But by section 201 it is provided that "every local action shall be tried in the county where the lands in question are situate or the cause of action arose," except where there is a trial at the bar of the Supreme Court.

An action for nuisance to lands by overflowing them with backwater is local, and must be tried in the county where the lands lie or the cause of action arose. *Deacon* v. *Shreve,* 3 *Zab.* 204.

As pointed out by Mr. Justice Dixon in *Hill* v. *Nelson,* 41 *Vroom* 376, 378: "Originally the pleader was required to state truly the place where each fact asserted by him occurred, and if issue was joined thereon the fact was tried by a jury summoned from that neighborhood or venue. Afterwards, when jurors were no longer expected to decide issues of fact upon their own knowledge, a fictitious venue was in some actions permitted, and the pleader assigned to his facts, under a *videlicet,* the place in which he desired the trial to be held. These actions were then styled transitory. But this fiction was not allowed when the cause of action was so related to a certain piece of land that it must have arisen on or near the land. Actions for such causes were styled local and triable only in the vicinity where the land lay."

He proceeded to show that this rule is of such substantial force in the common law that if a local cause of action arise outside of the realm the law courts have no jurisdiction over it. This decision was approved and followed by this court in *Doherty* v. *Catskill Cement Co.,* 43 *Vroom* 315.

Our legislature, so far from changing this rule of the common law respecting local actions, has perpetuated it by distinct enactment. The right of the plaintiff to have an action of this character tried in the county where the lands are situate or the cause of action arose is a substantial right, of which he may not lawfully be deprived by the court.

Assuming, therefore, that the plaintiff herein had two separate causes of action, arising in different counties and affecting lands situate in different counties, as was averred in its several declarations, the Supreme Court erred in making an order for consolidating the actions, the necessary effect of which was to require the plaintiff to go to trial before a jury of the county of Cumberland upon that action which arose in Salem county and affected lands therein situate.

If, therefore, the error assigned in this behalf is not reviewable by this court, it must be either because the error is not sufficiently manifested by the record and bill of exceptions, or because it arose otherwise than according to the course of the common law. Of course, the judgment that eventuated in favor of the defendant is according to the course of the common law, and the question is whether an alleged error that entered into this judgment, the error arising in the exercise of the equitable power of the court, in a matter not resting in discretion, taints the resulting common law judgment.

According to the English practice, a writ of error lay "where a party is aggrieved by any error in the foundation, proceeding, judgment or execution of a suit, in a court of record. * * * And it is said that whenever a new jurisdiction is erected by act of parliament, and the court or judge that exercise this jurisdiction act as a court or judge of record, according to the course of the common law, a writ of error lies on their judgments; but when they act in a summary way, or in a new course different from the common law, there a writ of error lies not, but a *cerliorari*. To amend errors in a court not of record, a writ of false judgment is the proper remedy." 2 *Tidd's Prac.* (*3d Am., from 9th London ed.*) 1134.

But in this state, and notably in this court, from an early period this limitation of the common law writ of error has been to some extent departed from, in favor of a more liberal review, and by a long line of cases it has become, with us, established law that the writ of error is not confined to the review of proceedings in the course of the common law, but extends to decisions rendered in the exercise of the equitable powers of a court of law, or in the course of its statutory or summary jurisdiction, provided they result in a final disposition of the matter and have not rested in the discretion of the court.

In *Woodruff* v. *Chapin*, 3 *Zab.* 555, after elaborate argument by able counsel, this court held, in an opinion by Chief Justice Green, that an order made by the Supreme Court settling the priority among executions against the same de-

fendant, and ordering one to be satisfied out of the proceeds of sale in preference to others, was reviewable on writ of error.

The subject was again exhaustively reviewed by this court in *Eames* v. *Styles,* 2 *Vroom* 490, where there was a motion to dismiss a writ of error brought to review a decision of the Circuit Court denying a motion to set aside an award of arbitrators, and in an opinion by Chief Justice Beasley, citing many cases, it was laid down that a writ of error will lie in all cases where the decision of the inferior court is final and has not proceeded from a matter resting in discretion.

In *Ennis* v. *Eden Mills Paper Co.,* 36 *Vroom* 577, this court reviewed an order of the Circuit Court refusing to open and set aside a mechanics' lien judgment.

In *Stratford* v. *Mallory,* 41 *Vroom* 294, we reviewed a decision of the Supreme Court rendered upon a summary investigation of an election of directors of a corporation.

In these cases final decisions that were not according to the course of the common law were held reviewable. It results, *a fortiori,* that a final judgment rendered in the course of the common law may be reversed if it results from an erroneous decision of an interlocutory matter not in the course of the common law, provided such decision did not lie in discretion. Indeed, such seems to have been the practice even in England. In *Gilliland* v. *Rappleyea,* 3 *Gr.* 138 (at *p.* 145), Chief Justice Hornblower said: "Although this court will not draw into discussion, upon writ of error, such orders as have been made upon application to the mere discretion of the court below, yet error may be assigned on such intermediate proceedings in a cause, not apparent on record, as show the final judgment to be erroneous. The books of entries furnish almost innumerable precedents of assignments of errors on such matters." Citing *Lilly's Ent.* 221, 292.

And in *Lucke* v. *Kiernan,* 39 *Vroom* 281, this court reviewed and reversed a judgment of the Circuit Court, on the ground of error in the making of an interlocutory order without notice to the defendant and without proof to show any ground for dispensing with such notice, the effect of the order

being to revoke an extension of time for pleading previously granted.

We are therefore clearly of the opinion that the order of the Supreme Court in the present case, entered upon the opinion of Justice Trenchard, and to which he sealed an exception, being an order not resting in discretion but affecting the substantial rights of the plaintiff, is the proper subject of an assignment of error.

We have no difficulty in finding in the record the evidence of the alleged error. The consolidation order is embodied in the strict record of the judgment as made up by the Supreme Court, and it appears by the same record to have been entered upon the motion of defendant's attorney and without consent of the plaintiff. And, as already pointed out, it further appears by bill of exceptions (if this were necessary) that objection was made by the plaintiff at the time the consolidation was ordered.

The function of a bill of exceptions is not confined to questions raised upon the trial of an action. By the ancient common law a writ of error lay only for an error in law apparent in the record or for an error in fact, such as the death of a party before judgment. It lay not for an error in law not appearing in the record. But more than six hundred years ago this was remedied by the *Stat. Westm.* 2; 13 *Edw. I., ch.* 31 (1 *Stat. at L.* 99; 1 *Bac. Abr.* 527; 2 *Inst.* 426), whereby it was enacted that "When one that is impleaded before any of the justices doth alledge an exception, praying that the justices will allow it, which, if they will not allow, if he that alledged the exception do write the same exception, and require that the justices will put to their seals for a witness, the justices shall so do; and if one will not, another of the company shall. And if the king, upon complaint made of the justices, cause the record to come before him, and the same exception be found not in the roll, and the plaintiff shew the exception written, with the seal of a justice put to, the justice shall be commanded that he appear at a certain day, either to confess or deny his seal. And if the justice cannot deny his seal, they shall proceed to judg-

ment according to the same exception, as it ought to be allowed or disallowed."

There is nothing in this language, nor in the purpose of the enactment, to confine the bill of exceptions to questions of law raised upon the trial of an action.

As pointed out by Lord Coke (2 *Inst.* 427) : "This extendeth not only to all pleas dilatory and peremptory, &c., and (as hath been said) to prayers to be received, oyer of any record or deed, and the like; but also to all challenges of any jurors and any material evidence given to any jury which by the court is overruled."

The statute of *Westminster* 2, in its substance, was enacted in this state as early as March 7th, 1797. *Pat. L., p.* 245; *Rev. Stat.* 1847, *p.* 980. In the revision of the Practice act in 1874 the act of 1797 was inserted in substance, omitting, however, the clause requiring the judges to appear and confess or deny their seals (*Gen. Stat., p.* 2573, *pl.* 242), and in a still more abbreviated form we find the enactment as section 211 of our present Practice act (*Pamph. L.* 1903, *p.* 592), which provides that "In any action where a writ of error lies, if exceptions shall be taken, the justice or judge shall settle and seal the same, unless the time limited for bringing a writ of error shall have expired; the exceptions shall be returned with the writ of error."

As long ago as the year 1797 it was held by our Supreme Court in *Ford* v. *Potts,* 1 *Halst.* 388, that the function of the bill of exceptions was not restricted to trials. Chief Justice Kinsey said: "The design of the statute was to provide a mode for examining errors which could not properly be inserted in the record, and allows an exception wherever a party is impleaded, that is, sued or prosecuted; and I see no reason for restricting it to trials. I recollect a case where a challenge to the array was made, and being overruled, a bill of exceptions was taken, and the question carried before the governor and council, by whom it was determined; and the right to except was never questioned. If the proceedings of the inferior court were illegal, and violated the rights of the party,

this court would, in some form or another, come at the error and see that justice was done."

It having been thus determined that the order of consolidation in this case is reviewable, and that the alleged error therein is properly evidenced, it follows that Mr. Justice Trenchard is disqualified from participation in the decision of the cause, and he has taken no part therein.

Coming now to the merits of the error assigned upon the consolidation order, we observe that the order was based upon a determination, as matter of fact, that the two suits theretofore depending were based upon the same cause of action. It is not contended that this finding of fact was unsupported by evidence, and so it is not reviewable here, for our review by writ of error is confined to questions of law only. Since, therefore, the plaintiff, instead of having two separate and distinct causes of action, as would appear from the averments of the declarations, had in fact but a single cause of action, which affected lands lying in two counties, the consolidation of the actions was not only within the power of the Supreme Court, but was entirely lawful and proper. For where there is a single injury by backwater affecting at the same time lands that lie in two counties, the action is triable in either county; or where by the construction of a dam in one county water is unlawfully backed upon lands lying in another county, the venue may be laid in either county. *Barden* v. *Crocker,* 10 *Pick.* 383, 390, and cases cited.

It may be added that the evidence returned with the bills of exceptions sealed at the trial clearly shows that the cause of action was such as was properly triable in either Cumberland or Salem.

The order for consolidation furnishes no ground for reversal.

The remaining assignments of error relate to the proceedings upon the trial before the circuit judge and jury.

The third assignment refers to six different exceptions sealed to the rulings of the trial judge, permitting as many different questions to be asked of the plaintiff's witness Rider upon his cross-examination.

This assignment is multifarious, and for that reason might, perhaps, be properly ignored. See *Associates* v. *Davison,* 5 *Dutcher* 415, 418; *State* v. *Zeilman,* 46 *Vroom* 357. Upon examining the testimony, however, that was admitted over objection, while it appears that certain questions were irrelevant, the evidence adduced was not such as can be deemed to have materially prejudiced the plaintiff in error; especially since the trial judge, at plaintiff's request, gave to the jury instructions that eliminated it from consideration.

The next assignment of error that is relied upon relates to the refusal of the judge to charge as requested by the plaintiff as follows: "The defendant's own witnesses prove that the level of the water in the defendant's pond is twelve inches below the level of water at the plaintiff's sheeting, and that at the same time the water was nineteen inches deep on the sheeting. If you believe this evidence, it constitutes an actionable wrong on the part of the defendant, and the plaintiff is entitled to recover unless some defence is established." We think the trial judge was justified in overruling this request, because from the mere facts stated therein it did not necessarily follow that the natural level of the water upon plaintiff's property had been raised by defendant. The trial judge charged upon this topic as follows: "If the defendant dammed the water back so that it flooded the plaintiff's land beyond the ordinary confines of the stream upon its land, and the result of that was to injure its crops, it is entitled to a verdict at your hands for such damage as you think it has sustained, unless you find that it has suffered the defendant to pen up those waters and hold them there during a period of twenty years."

This instruction sufficiently laid before the jury the real matter in controversy. The only criticism that suggests itself to us is that the instruction as given did not call the jury's attention to the fact that there might be a liability for some damages (perhaps only nominal damages) for unlawful backwater, even though it did not injure the plaintiff's crops. But there was no efficient request that called to the judge's mind the liability of the defendant to respond in damages

other than such as arose from injury to the plaintiff's crops. Nor was there any exception to the instruction as given.

Error is assigned because of the refusal of the third request (which referred to the defence of adverse user), and of the fourth request (which referred to the burden of sustaining this defence). But these points were included in certain other requests submitted by the plaintiff which were charged by the trial judge.

The other questions raised in argument require no special mention.

The judgment under review should be affirmed.

GARRISON, J. (dissenting). A word or two will explain my vote, which is with the majority upon the merits of the case but is opposed to the decision as to the constitutional disqualification of one of the members of this court, which incidentally involves an important question of practice.

The situation is correctly described in the opinion of the Chancellor. The plaintiff in error, who was the plaintiff below, had brought two suits against the defendant for the same cause of action, one in Salem county and one in Cumberland county. An application under the one hundred and sixty-fourth section of the Practice act was made to Justice Trenchard at chambers, who, conceiving that the plaintiff's cause of action was entire, and could all be disposed of in the action in Cumberland county, ordered that the action in Salem county be discontinued. Subsequently the action in Cumberland county came on for trial before Judge Endicott and a jury, resulting in a verdict for the defendant, upon which judgment was entered against the plaintiff, who thereupon sued out this writ of error in the return to which appears the order that had been made by Justice Trenchard at chambers.

My associates think that this order is properly before us on this writ of error, and that its effect is to disqualify Mr. Justice Trenchard from sitting as a member of this court upon the review of the trial errors of Judge Endicott. I differ

with the majority of the court upon each of these propositions for reasons briefly to be stated.

I agree that the judgment brought up by this writ of error should be affirmed, and I concur in so much of the opinion of the Chancellor as deals with the bills of exception sealed by Judge Endicott upon the trial of the action in which such judgment was recovered.

I do not agree that the order made by Justice Trenchard at chambers is brought here by this writ of error, hence I do not agree that Justice Trenchard, by reason of his having made such order, is disqualified from sitting upon the review of the errors assigned upon this writ of error; neither do I share the views expressed in the majority opinion as to the practice upon error, on the strength of which the disqualification of Mr. Justice Trenchard is based. To be more explicit, I do not agree that the order made by Justice Trenchard discontinuing the action that had been brought in Salem county is any part of the record of the action brought in Cumberland county, which resulted in the judgment that is brought up by this writ of error; or that such order has any place in the return to such writ of error, or that such order in anywise appertains to or affects the judgment under review. The force of this last remark would be strikingly apparent had we concluded that Justice Trenchard erred in making the order complained of; for in that case we would be confronted with the more than dubious propriety of reversing a judgment for defendant because of an error, the sole effect of which was to increase the measure of damages the plaintiff stood to recover. For it must be obvious to anyone that the practical effect of the order discontinuing the plaintiff's action in Salem county was to double up the damages recoverable by the plaintiff in its Cumberland county action, so that if such order was erroneous it was injurious in no respect to the action whose final judgment is before us. The normal rules of correct practice imperatively required that the plaintiff, if it conceived itself aggrieved by the change of venue of its Salem county action, should appeal to the Supreme Court before asking double damages of the Cumberland county jury. Such experimentation is perilously

near to waiver. If not waived the error was in the Salem county action. That an error injurious in one action cannot lead to the reversal of the judgment recovered in another action would seem to require no argument.

Cases presently to be cited show conclusively that the order made by Justice Trenchard is no part of the record of the judgment recovered before Judge Endicott, and that it is not embraced in the return to the writ of error that constitutes the case before us.

It may, however, be urged that Justice Trenchard's order, even if not strictly embraced in the return to this writ of error, is before us by virtue of its essentially reviewable character. To this, however, I can no more assent than I can to the propriety of its place in the return. The order was made by a single justice at chambers. Such orders are either of a discretionary character, and on that account not subject to review, or else they are reviewable, in which latter case they are reviewed by the Supreme Court itself under a common law practice that is one of its inherited and established prerogatives. *Key* v. *Paul,* 32 *Vroom* 133.

Inasmuch as this prerogative antedated the constitution of 1844, it was one of those "powers" of the Supreme Court that were authoritatively continued by that instrument, so that even should an act of the legislature expressly authorize the bringing into this court in the first instance of orders thus susceptible of review by the Supreme Court, such statute would, under our decisions, be inefficacious and invalid as an unconstitutional interference with the supervisory faculty of the Supreme Court over its own practice. *Tunison* v. *Central Railroad Co.,* 26 *Vroom* 561; *East Orange* v. *Hussey,* 41 *Id.* 244; *In re Branch, Id.* 537.

Orders of a single judge striking out defective pleadings may now, by force of a statutory practice, be spread upon the record of the judgment recovered in the action, and be in that way returned to this court, because such orders are otherwise not of a reviewable nature; but this statutory practice is confined to the one class of cases mentioned, and only serves to emphasize the dilemma presented by a reviewable order such

as that now under consideration, for if Justice Trenchard's order be not reviewable it is not the subject of this writ of error, whereas if it be reviewable it must be reviewed by the Supreme Court, a procedure that even statutory provision, still less mere irregularity of practice, is powerless to abrogate or impair.

The dilemma presented by the constitutional right of the Supreme Court to review the orders of one of its own justices is not disposed of by the assertion that the order of a single justice is the same thing as the order of the Supreme Court itself. Not only is such assertion manifestly unsound in point of fact, but it is also in direct contravention both of our statutory law and of the established practice of our courts, for if such identity in reality existed the studied purpose of our Practice act, in many of its sections, to treat the two as different things would be utterly meaningless, and the statement of Mr. Justice Dixon in Key *v.* Paul that "orders made by a single judge at chambers, even though made under the express authority of a statute, are generally subject to review by the court itself," would be a palpable absurdity. More conclusive still are the provisions of the Practice act in sections 251 and 252, the first of which states the condition upon which the decision of a single justice shall be deemed to be the decision of the Supreme Court, viz., when the matter has been so heard by *consent* of parties; and the second of which authorizes the single justice to whom application is made to refer the same to the Supreme Court—provisions that would be fatuous in the extreme if it were true that without such consent, and without such reference, an order of a single justice was, of itself, the order of the Supreme Court. The very section of the Practice act under which the present motion was made before Justice Trenchard expressly provides that the application may be made to the court in which the action is pending or may be made to a judge thereof. The application having been made to a judge, an appeal lay to the Supreme Court, which cannot be brought to us instead of to it. It is perhaps needless to say that a bill of exceptions allowed by the judge who made the order is entirely inefficacious to

this end. That the order of Justice Trenchard is not really regarded as the order of the Supreme Court itself is conclusively shown by the decision that Justice Trenchard alone is disqualified to sit, whereas had his order been in fact the order of the Supreme Court, the decision must have been that the Supreme Court, or at least some one of its branches, was disqualified. The fact therefore must be faced that we are dealing with the order of a single judge, and that we are deciding whether such order is part of the record of the judgment brought here by this writ of error, or is itself susceptible of being brought directly to this court for review. I have sufficiently stated that in my opinion in neither of these ways is the order of Justice Trenchard before us; if there is any other way in which such order is lawfully before us I have to confess my entire ignorance of the legal method by which it was brought here.

The practice of the Supreme Court of this state upon error, prior to the constitution of 1844, was stated generally, as regards chambers orders and practice motions by Chief Justice Ewing as early as 1828, in the case of *M'Courry* v. *Doremus,* 5 *Halst.* 245, where the practice of the Supreme Court of the United States, as laid down in *Wright* v. *Hollingsworth,* 1 *Pet.* 165, 168, was approved and followed. After the organization of this court in 1845, and in the first volume in which its decisions were reported, this court, speaking through Mr. Justice Carpenter in the case of *Rutherford* v. *Fen,* 1 *Zab.* 700, laid down the rule that error was not assignable in this court on side bar rules where no judgment is made up or ought to be made up and entered of record and signed. In the opinion then delivered (*Evans* v. *Adams, 3 Gr.* 373, and *Norcross* v. *Boulton,* 1 *Harr.* 310), two Supreme Court decisions in which Chief Justice Hornblower had inclined to a more lax practice, as he had also at about the same period in *Gilliland* v. *Rappleyea, 3 Gr.* 138, were animadverted upon to the point of disparagement. This court has never, that I am aware, receded from this position with respect to side bar motions, and in the sixty years that have intervened no trace of a contrary practice is discoverable, still less, if that were

possible, of a practice by which orders of a single judge could be brought directly to this court. If such a thing could be done it would have been done, and our reports would teem with cases in which it had been done. The entire absence of all such decisions is the strongest possible argument for the entire absence of any such practice. The only case that at all looks that way is the recent one of *Lucke* v. *Kiernan,* 39 *Vroom* 281, and that is not even *sub·silentio* an authority for such a practice. *Lucke v.* Kiernan was a case in which a judgment brought up by writ of error and attacked by the plaintiff in error as irregularly entered was sought to be justified by the *defendant in error* by force of a chambers order that allowed such judgment to be entered. The decision was that the attempted justification failed. The question of practice upon error that we are considering was therefore not presented, and it is not pretended that it was passed upon.

On the other hand, as recently as 1898 it was held in the Supreme Court, by a decision participated in by Justices Depue and Van Syckel, the two most experienced practitioners on the bench, that the order of the Court of Oyer and Terminer for a struck jury to try an indictment for murder formed no part of the record of the judgment, which was murder in the first degree. The matter of practice thus expressly decided was directly raised by an application for a *mandamus* by the relator, who was under sentence of death and sought to have his conviction by a struck jury appear on the record in order that it might be returned with and reviewed by a writ of error. *Clifford* v. *Hudson Oyer and Terminer,* 32 *Vroom* 493.

In 1901 Mr. Justice Dixon, in this court, in the case of *Lewis* v. *Lewis,* 37 *Vroom* 251, again stated the rule as to what is properly embraced in a return to a writ of error, citing the early decision of Chief Justice Ewing in M'Courry *v.* Doremus.

It would seem as if the practice on the return to a writ of error was entirely settled, while as to bringing chambers motions directly to this court it may safely be said that no member of this court ever knew of a single instance in which it

was done, and that no member of the bar ever for a moment supposed that such a course was open to him.

The cases cited in the opinion in which sundry final determinations of the Supreme and Circuit Courts have been brought into this court and reviewed upon error mark our departure from the English practice as regards the character of the final judgments that may be reviewed upon error, but they are devoid of any bearing upon the character of the tribunal to which our writ of error runs, which is the sole point of difference between my associates and myself. If I have succeeded in stating what that point of difference is, and why I vote with the majority while dissenting from the views as to the practice on error expressed in the majority opinion, the object of this memorandum is attained. The conclusion of the matter, as far as my vote is concerned, is that the order of Justice Trenchard being no part of the record of the judgment brought up by this writ of error, and not being the subject of direct and independent review by this court, is not before us for any purpose. This being so, I am constrained to dissent from the decision by which Mr. Justice Trenchard is debarred from sitting as a member of this court.

Finding no error in the return that comes up with the judgment recovered before Judge Endicott, which I conceive to be all that is properly before us, I vote with the majority of the court that such judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 14.

*For reversal*—MINTURN, J. 1.